STATE of Alaska, Appellant,

v.

PUBLIC SAFETY EMPLOYEES
ASSOCIATION, Appellee.

No. S–3291.

Supreme Court of Alaska.

Oct. 5, 1990.

Kathleen Strasbaugh, Asst. Atty. Gen., Douglas B. Baily, Atty. Gen., Juneau, for appellant.

William K. Jermain and James A. Gasper, Jermain, Dunnagan & Owens, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

The state appeals from a decision of the superior court ordering it to comply with the terms of an interest arbitration award assigning certain state job classifications to collective bargaining agreement pay ranges. In the proceedings before the arbitrator, the parties argued the question whether the assignment of positions to pay ranges is a mandatory subject of bargaining. The arbitrator concluded that it is. When the state declined to implement the arbitrator's award, the Public Safety Employees Association ("PSEA") sought enforcement of the award, and the superior court ordered the state to comply. The state appealed. The state now argues that the arbitrator exceeded his authority and committed gross error in reaching his decision. Because the parties agreed to submit the question of the arbitrator's authority to the arbitrator, we review the arbitrator's decision that he had authority to determine the ultimate question with the great deference ordinarily given to arbitrators' decisions. We do not believe that the arbitrator committed gross error, and therefore uphold his decision on arbitrability. Because the arbitrator's decision on the ultimate question is reasonable, we affirm the decision of the superior court.

## I.

Airport Safety Officers ("ASOs") provide police protection and fight fires at the state's major airports. They are employed by the Department of Transportation and Public Facilities, and their ranks include Sergeants and Lieutenants who supervise Officers and Recruits. Court Service Officers ("CSOs") transport prisoners, provide courthouse security, and serve process. They are employed by the Department of Public Safety ("DOPS") and supervised by State Troopers.

Prior to 1977, ASOs were paid comparably to State Troopers, and Judicial Service Officers ("JSOs"), who had duties similar to present CSOs, were paid somewhat less. In 1977, the Alaska Labor Relations Agency certified PSEA as the collective bargaining representative for a unit of employees of DOPS including State Troopers. ASOs and CSOs were added to this unit in 1987 and 1988. By this time, ASOs and CSOs were being paid substantially less than Troopers.

■ Under the Public Employment Relations Act ("PERA"), AS 23.40.070–.260, Troopers, ASOs, and CSOs are Class I employees who provide "those services which may not be given up for even the shortest period of time." AS 23.40.200(a)(1). They may not strike, but in the event of an impasse in collective bargaining, they are entitled to have differences submitted "to arbitration to be carried out under AS 09.-43.030." AS 23.40.200(b). In 1988, PSEA and the state reached an impasse in collective bargaining and agreed to submit the remaining twenty-three disputed contract terms to interest arbitration.[1] The parties agreed to submit a final offer on each disputed issue. The arbitrator was to select one of the alternative proposals on each issue.

The only disputed issue relevant to this appeal concerned Article 15, Section 1 of the collective bargaining agreement, the salary range plan for employees in the bargaining unit.[2] Under the PSEA contract, Troopers are assigned to Ranges 74–78. PSEA proposed assigning ASOs to Ranges 74–77 and CSOs to Range 74. PSEA argued that the assignment of job classifications to salary ranges is a mandatory subject of bargaining and was thus properly before the arbitrator. It argued that the duties of ASOs are comparable to those of Troopers and pointed to the fact

that ASOs and Troopers were paid comparably until 1977. It maintained that employees in the new CSO classification should be paid similarly to those in the old JSO position which involved substantially similar duties.

The state argued that determination of salary classifications is a management right and not a mandatory subject of bargaining. The state expressed its position to the arbitrator as follows:

> If the arbitrator is persuaded that the subject of classification is not mandatory, then the State's proposal on Article 15, Section 1 can only be awarded. Should the arbitrator conclude that it is within his jurisdiction to fully consider the merits of Article 15, Section 1, the State ... believes that it has the more reasonable proposal on this issue.

The state proposed assigning ASOs and CSOs to the salary ranges closest to their present salaries, Ranges 71–74 for ASOs and Range 71 for CSOs. This scheme places ASO Lieutenant IVs at the same salary range as Trooper Recruits.

The arbitrator concluded that since salary range classification involved wages and not "[t]he classification title of these employees, their duties, job descriptions [or] chain of command," it was a mandatory subject of bargaining. After noting that "[t]he only apparent reason that [ASO] wages fell behind those of the Troopers is that they were initially excluded from the Association's bargaining unit," the arbitrator adopted PSEA's position.

The state implemented the arbitrator's decision except for the assignment of ASOs and CSOs to salary ranges. More than three months after the arbitrator issued his decision, PSEA filed this action in the superior court seeking an order requiring the state to implement Article 15, Section 1. It subsequently filed a motion to enforce the

---

1. Interest arbitration has been defined as "the arbitration of a dispute of interest, which involves the negotiation of a new, collective agreement (contract) or revision of such an agreement." N.J. Pub. Employer–Employee Rel. Study Comm'n Report to the Governor and the Legislature 143 (1976). Compulsory interest arbitration is that which is mandated by statute.

2. The assignment of job classifications to salary ranges is referred to in the collective bargaining agreement and the parties' briefs as "classification." It is distinct from the process of associating job titles and duties, a process also known as classification. *See* AS 39.25.150(1).

arbitration award. The state argued that the arbitrator exceeded his authority by making an award on an issue that was not a mandatory subject of bargaining. The court granted PSEA's motion. The state moved for reconsideration. On reconsideration the court affirmed its previous order, explaining that regardless whether classification is a mandatory subject of bargaining, the parties agreed to submit the classification question to the arbitrator. The court entered judgment in favor of PSEA, and the state appealed.[3]

## II.

■ PSEA argues that the state is precluded from challenging the arbitrator's decision in this enforcement action filed more than ninety days after the arbitrator reached his decision. Whether this is so depends upon the procedural rules governing arbitration under PERA. Many states have statutes providing that impasses in public employee collective bargaining may be resolved by arbitration. The Alaska statute is somewhat unusual in not clearly specifying procedures for the arbitration. We have not had occasion to address this question, and it is not altogether clear which procedural rules apply to arbitration conducted under AS 23.40.200.

The Uniform Arbitration Act ("UAA"), AS 09.43.010–.180, provides one possible set of procedural rules. Under the UAA, the superior court shall confirm an arbitrator's award unless an action to vacate, modify, or correct an award is filed in the superior court within ninety days after the delivery of the award. AS 09.43.110; *see also* AS 09.43.120–.130. Under the UAA, the state's objections are not timely. They could not be raised as defenses in an enforcement action commenced more than ninety days after the delivery of the arbitrator's award.[4] PSEA suggests that the UAA should apply to this case. The state argues that the UAA is facially inapplicable to this case because it provides that "AS 09.43.010–09.43.180 do not apply to a labor-management contract unless they are incorporated into the contract by reference or their application is provided for by statute." AS 09.43.010.

We believe that the UAA as a whole is not applicable to this case. AS 23.40.-200(b)[5] does provide that interest arbitration shall be conducted under AS 09.43.-030,[6] the section of the UAA providing for appointment of arbitrators by agreement of the parties, or, in the absence of an agreement, by the superior court. However, while it is arguable that this reference implicates all of the UAA, we believe that the legislature would have specifically indicated an intention to make the whole

---

3. The legislature specifically disapproved the use of state funds to implement the decision in Ch. 116, pp. 65, 66, 74, 75, SLA 1989. The state used this as a basis for arguing that this action is moot. However, the legislature reversed its position in Ch. 15, § 3, SLA 1990, and the state concedes that "it would appear that there may no longer be grounds for dismissal on the grounds of mootness." We agree.

4. See, e.g., Sheet Metal Workers' Int'l Ass'n, Local 252 v. Standard Sheet Metal, Inc., 699 F.2d 481, 483 (9th Cir.1983); Service Employees Int'l Union, Local 36 v. Office Center Servs., Inc., 670 F.2d 404, 412 (3d Cir.1982); Chauffeurs Local 135 v. Jefferson Trucking Co., 628 F.2d 1023, 1025–26 (7th Cir.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981).

5. AS 23.40.200(b) provides:

The class [of public employees whose services may not be given up for even the shortest period of time] is composed of police and fire protection employees, jail, prison and other correctional institution employees, and hospital employees. Employees in this class may not engage in strikes.... If an impasse or deadlock is reached in collective bargaining between the public employer and employees in this class, and mediation has been utilized without resolving the deadlock, the parties shall submit to arbitration to be carried out under AS 09.43.030.

6. AS 09.43.030 states:

If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. If no method of appointment is provided, or if the agreed method fails or for any reason cannot be followed, or when before the hearing an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

UAA applicable in arbitrations conducted under PERA if it had so intended.[7]

## III.

■ AS 23.40.200(b) provides for arbitration of contract disputes involving Class I public employees. However, that section does not require arbitration of permissive subjects of bargaining because these may be the subject of unilateral action [8] and it is unlawful to bargain to an impasse on these subjects.[9] Both parties presented the arbitrator with proposals for assigning positions to salary ranges and argued the question whether those proposals concerned a mandatory subject of bargaining. The state specifically framed the issue presented to the arbitrator in terms of two questions relevant to this appeal: (1) whether Article 15, Section 1 concerned a mandatory subject of bargaining, and (2) if it did, which party's proposal was more reasonable. The arbitrator recognized that he was presented with these two distinct questions and answered both explicitly.

■ The state argues vigorously "that arbitrability is for the courts to determine." In general, this is true. However, arbitration is a creature of contract law; parties contract to have their disputes resolved by an arbitrator. They ought to be able to contract to have their disputes about arbitrability so resolved. In fact, "[t]he determination of arbitrability is often left by the parties to the arbitrator. There are sound reasons for this. [For example,] [t]he de-

lay and expense of court proceedings are avoided." F. Elkouri & E. Elkouri, *How Arbitration Works* 216 (4th ed. 1985). In view of these considerations, the federal rule is that arbitrability is a question for the courts "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). We adopt this rule under Alaska law. The parties in this case clearly and unmistakably agreed to submit the question whether Article 15, Section 1 concerns a mandatory subject of bargaining to the arbitrator. We therefore believe that the superior court correctly found that the arbitrator did not act outside the scope of his authority when he determined that Article 15, Section 1 concerned a mandatory subject of bargaining.

## IV.

■■ Decisions of arbitrators ordinarily are not overturned by courts unless the arbitrator made "mistakes which are both obvious and significant." *City of Fairbanks v. Rice*, 628 P.2d 565, 567 (Alaska 1981). Because the state agreed to submit to the arbitrator the question whether Article 15, Section 1 concerned a mandatory subject of bargaining, we review the arbitrator's answer to that question only for such gross error.[10]

■ Determining the wages of state employees is a three-step process. First, job functions are assigned to position classifi-

---

7. Finality is an important consideration, even in interest arbitrations. Public employers, unions, and employees alike need to know within a reasonable time that an arbitrator's decision is immune from collateral attack. Although the legislature eventually might decide not to fund an arbitrator's award, the parties to an agreement reached through arbitration should be able to proceed to implement the agreement without worry that it is subject to challenge months or years in the future. This situation cries out for a legislative response.

8. *See Alaska Community Colleges' Fed'n of Teachers Local 2404 v. University of Alaska*, 669 P.2d 1299, 1305 (Alaska 1983) (Alaska Labor Relations Agency remedial orders must distinguish between mandatory and permissive subjects of bargaining).

9. *See also N.L.R.B. v. Wooster Div. of Borg–Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958) ("[I]t is lawful to insist upon matters within the scope of mandatory bargaining and unlawful to insist upon matters without.").

10. The state argues that a less deferential standard of review should be applied to decisions in interest arbitrations. We leave to the next section of this opinion the question whether decisions in compulsory interest arbitrations deserve more rigorous review than other decisions of arbitrators. The concerns justifying less deference to arbitrators' decisions in compulsory arbitrations are not applicable to the review of decisions on questions voluntarily submitted to arbitrators.

cations. *See* AS 39.25.150(1) (state personnel rules shall provide for a position classification plan including titles and job descriptions). Second, position classifications are assigned to salary ranges. Finally, actual pay rates for the various salary ranges are determined. *See* AS 39.25.-150(2). These last two steps for determining the salaries of members of the PSEA bargaining unit are memorialized independently in the PSEA contract. It is undisputed that determining the pay rates for the various ranges is a mandatory subject of bargaining. The question before the arbitrator was whether the assignment of positions to pay ranges is a permissive or mandatory subject of bargaining.

The arbitrator concluded that Article 15, Section 1 concerned a mandatory subject of bargaining. Mandatory subjects of bargaining include "wages, hours and other terms and conditions of employment." *See* AS 23.40.250(1). " '[T]erms and conditions of employment' means the hours of employment, the compensation and fringe benefits, and the employer's personnel policies affecting the working conditions of the employees; but does not mean the general policies describing the function and purposes of a public employer." AS 23.40.-250(8). The statutory sections defining the mandatory subjects of bargaining, "wages, hours and other terms and conditions of employment," AS 23.40.250(1), and the permissive subjects of bargaining, "the general policies describing the function and purposes of a public employer," AS 23.40.-250(8), are both sufficiently broad that either, if given an expansive reading, could engulf the other.

The state correctly observes that the merit system and the principle of like pay for like work are fundamental to public employment. Recognizing the assignment of positions to salary ranges as a mandatory subject of bargaining gives employees a voice in a matter that implicates the principle of like pay for like work. If the state and a union bargained to an impasse, salary ranges would be determined by an arbitrator rather than the state. However, the Public Employment Relations Act was enacted because "[i]f public employees have

been granted the right to share in the decision-making process affecting wages and working conditions, they have become more responsive and better able to exchange ideas and information on operations with their administrators." AS 23.40.070. State employees are as familiar with their qualifications and positions as their administrators are. They may be able to make a valuable contribution to the process of assigning positions to salary ranges. In this respect, giving public employees a voice in matters like salary range classification seems consistent with the purposes of the Act.

Decisions in other jurisdictions are not very helpful because many states have more detailed provisions addressing this question. For example, based upon a very specific merit system exception to the definition of the terms and conditions of employment, the New Hampshire Supreme Court has held that most subjects within the jurisdiction of the Personnel Commission, including salary classification, are not negotiable. *State Employees' Ass'n v. New Hampshire Pub. Employee Labor Relations Bd.*, 397 A.2d 1035 (N.H.1978). Similarly, a New York court held that classification of court employees is not a mandatory subject of bargaining because the legislature specifically declared that "allocations and reallocations to salary grades of positions in the classified service of the state are not terms and conditions of employment...." *Evans v. Newman*, 71 A.D.2d 240, 423 N.Y.S.2d 59, 62 (1979) (quoting 1970 N.Y.Laws ch. 158, § 24), *aff'd*, 49 N.Y.2d 904, 428 N.Y.S.2d 226, 405 N.E.2d 707 (1980) (order).

The Maryland Supreme Court has recognized that "classification" has a significant wage impact. Because subjecting job descriptions and position classifications to negotiation would be chaotic, it held that it was not an abuse of discretion for the State Board of Education to find the subject only a permissive subject of bargaining. *Montgomery County Educ. Ass'n v. Board of Educ.*, 311 Md. 303, 534 A.2d 980, 988–90 (1987). However, PSEA never sought to bargain over job descriptions or position

classifications, but simply the assignment of position classifications to salary ranges.

■ The California Supreme Court has recognized that it is appropriate to use definitions of "wages, hours, and working conditions" under the federal laws applicable to private employers when interpreting a city charter provision providing for public employee interest arbitration because relevant statutes demonstrated no intention to treat public employees different from private sector employees. *Fire Fighters Union, Local 1186 v. City of Vallejo,* 12 Cal.3d 608, 116 Cal.Rptr. 507, 514, 526 P.2d 971, 977 (1974). Under federal law, "wages" should be construed fairly broadly to include all "direct and immediate economic benefits flowing from the employment relationship." *W.W. Cross & Co. v. N.L.R.B.,* 174 F.2d 875, 878 (1st Cir.1949). Under the federal law applicable to private sector employees, we see no basis for distinguishing the assignment of position classifications to salary ranges from other issues concerning wages. If this case involved private sector employees, the dispute would be said to involve wages.

Whether the assignment of position classifications to collective bargaining agreement salary ranges is a mandatory subject of bargaining under PERA is a close and difficult question that we need not decide today. The arbitrator concluded that Article 15, Section 1 concerns wages, a mandatory subject of bargaining. We cannot say that it was gross error for the arbitrator to so hold.

### V.

■ Because the arbitrator was not in error in concluding that salary range classification is a mandatory subject of bargaining, his decision could only be in error if adoption of PSEA's position was so unreasonable that the arbitrator's action does not pass muster under the appropriate standard of review.

■ When parties agree to submit their differences to an arbitrator, they should be bound by his decision. Courts should be reluctant to upset arbitrators'

awards, lest the advantages of arbitration as a fast and certain means of resolving disputes be lost. Occasional uncorrected errors in arbitrators' decisions are tolerable because the parties have agreed to accept reduced possibilities of appellate review in order to have their dispute resolved quickly and with certainty. Compulsory arbitration is different. The parties have not agreed voluntarily to accept reduced possibilities of appellate review in order to resolve their dispute swiftly. It is by operation of law that the parties are denied their usual right to have their disputes resolved by the courts. Therefore, a standard of review higher than gross error is appropriate.

Many states provide such a heightened standard of review by statute; Alaska does not. Other states have adopted a heightened standard of review as a matter of constitutional or common law. The New York Court of Appeals has held that due process requires that awards in private sector compulsory arbitration "be judicially reviewable for errors of law, competency and substantiality of evidence, as well as arbitrary and capricious conduct." *Mount St. Mary's Hosp. v. Catherwood,* 26 N.Y.2d 493, 311 N.Y.S.2d 863, 870, 260 N.E.2d 508, 513 (1970). It thus held that contractual provisions imposed in compulsory interest arbitration should be reviewed under the arbitrary and capricious standard and awards in compulsory grievance arbitration should be reviewed under the substantial evidence standard. *Id.* Noting that compulsory interest arbitration is a quasi-legislative function, the Rhode Island Supreme Court has also held that courts should review compulsory interest arbitration awards to determine whether an arbitrator's decision was arbitrary. *City of Warwick v. Warwick Regular Firemen's Assoc.,* 106 R.I. 109, 256 A.2d 206, 211 (1969).

■ We believe it appropriate to apply the arbitrary and capricious standard when reviewing awards in compulsory interest arbitrations. Without deciding whether such a standard is constitutionally required, a question the parties have not

briefed, we will henceforth apply it as a matter of common law.

The state asserts that "[i]t is self-evident from examination of the record and from common knowledge that the circumstances under which state troopers work are significantly more difficult than either of the new categories. ASOs and CSOs spend a good deal of their workdays indoors and do not have patrol duties." However, in view of the duties of ASOs and CSOs discussed above, we cannot conclude that the arbitrator's decision to adopt PSEA's proposed salary range classification plan was arbitrary or capricious.

The decision of the superior court upholding the arbitrator's decision and ordering its enforcement is therefore AFFIRMED.