Richard A. HEMMEN, Petitioner,

v.

STATE of Alaska, DEPARTMENT OF
PUBLIC SAFETY, Respondent.

No. S–585.

Supreme Court of Alaska.

Dec. 13, 1985.

Dennis E. McKelvie, Downes, McKelvie & Stepovich, Fairbanks, for petitioner.

Randy M. Olsen and Gary G. Foster, Asst. Attys. Gen., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for respondent.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Richard Hemmen resigned his position with the Alaska Department of Public Safety after the Department threatened to fire him for refusing to accept a transfer to another location. His action for reinstatement, payment of back pay and accrued benefits was dismissed when the superior court, granting partial summary judgment, concluded that Hemmen's resignation was voluntary. Hemmen petitioned for review.

### I. FACTS AND PROCEEDINGS BELOW

In August 1976, Hemmen began working for the Department of Public Safety's Division of Fish & Wildlife Protection ("Department") in Fairbanks. He steadily advanced within the Department, eventually achieving the rank of sergeant.

In the spring of 1982, a sergeant's position became vacant in the Department's Anchorage office. After efforts to solicit volunteers for transfer to Anchorage failed, the Department conducted a review of all qualified sergeants. Hemmen was selected for involuntary transfer.

Hemmen immediately informed the Department that he did not wish to transfer, citing a number of personal reasons. In addition, he claimed that the Department's proposed transfer violated the collective

bargaining agreement ("agreement") between the state and his union, the Public Safety Employees Association ("PSEA"). Specifically, Hemmen claimed that the transfer violated Article 12 of that agreement, which provided in part:

> (d) The best interest of the Department may necessitate the involuntary transfer of a member. Involuntary transfer of a member who has served with the Department in those positions covered by the bargaining unit in excess of five (5) years will not be normal practice, *except in special job requirements or extenuating circumstances.* Recruit members on probationary status are subject to involuntary transfer without regard to this paragraph.

(Emphasis added).

With the help of the PSEA, Hemmen filed a formal grievance. The arbitrator concluded that he had no authority to resolve the issue, because Article 10 of the PSEA contract explicitly excluded binding arbitration of involuntary transfer grievances.[1]

The Department thereupon ordered Hemmen to report to Anchorage or face termination. Not wanting to be fired, Hemmen resigned under protest one day before he was to report to Anchorage.

Hemmen later filed suit in the superior court, alleging that he had been constructively discharged. Both parties moved for summary judgment. The superior court denied both motions on the grounds that genuine issues of material fact remained as to whether the Hemmen transfer was the result of "special job requirements or extenuating circumstances," or whether the agreement had been breached. Furthermore, the court reasoned that the voluntariness of Hemmen's resignation was linked to the question of whether or not a breach occurred.

The case proceeded to trial, but a mistrial was declared when the jury was unable to agree upon a verdict. Before a new trial could begin, the superior court granted the state's motion for partial summary judgment, precluding Hemmen from being awarded reinstatement, back pay and past benefits.

Hemmen then moved for reconsideration and his motion was denied. The court concluded that because Hemmen resigned prior to being transferred, his termination

1. Article 10 provided that:

*Section 1—General*

For the purposes of this Agreement, a grievance is defined as a dispute arising out of the meaning or interpretation of a particular clause of this Agreement, the Personnel Rules or the Operating Procedures Manual, or an alleged violation of such Agreement, Personnel Rules or Operating Procedures Manual. The Employer, the Association (or its designee) and the aggrieved member or members, as the case may be, shall use the following procedure as the sole means of settling said grievance.

Violations or alleged violations of the Personnel Rules and Operating Procedures Manual and grievances relating to involuntary transfers may be grieved through the Commissioner of Administration and are not subject to binding arbitration. When disciplinary actions involving discharge, suspension or demotion are imposed upon a member, the Employer will furnish the Association with a written copy within forty-eight (48) hours of the reasons for such disciplinary action. Written reprimands may be grieved through the Commissioner of Administration. If it is not resolved to the grievant's satisfaction, he may include a written rebuttal, which shall be attached to and become a part of the written reprimand. Violations of a specific term or terms of this Agreement (*except involuntary transfers*), disputes arising out of a term or terms of this Agreement, and disciplinary grievances involving discharge, demotion or suspension, including those arising from violations or alleged violations of the Operating Procedures Manual of the Personnel Rules, shall be subject to binding arbitration.

A grievance which involves the meaning or application of the express terms of the Agreement (*except involuntary transfers*) and disciplinary grievances involving discharge, demotion or suspensions which have not been settled at Step Four may be submitted by the Association or the Employer to arbitration. The request for arbitration must be received within ten (10) working days of the completion of Step Four. The parties will meet within five (5) working days of receipt of the request to strike names.

(Emphasis added).

was voluntary. We granted Hemmen's petition for review.[2]

## II. WAS BINDING ARBITRATION REQUIRED?

As a member of the PSEA, Hemmen was subject to the terms of that association's collective bargaining agreement with the State. The agreement in force at the time of Hemmen's resignation provided for binding arbitration as the final step in all grievances, *except for those grievances involving involuntary transfers.*[3] Hemmen argues, among other things, that this exception violates AS 23.40.210. That section provides in part that "[t]he agreement shall include a grievance procedure which shall have binding arbitration as its final step."[4] The State opposes our consideration of this issue on the grounds that it is untimely and moot.

 While the superior court's decision did not address this issue, the record indicates that Hemmen raised his statutory argument prior to the superior court's grant of summary judgment. Therefore, the issue was raised in a timely fashion. The fact that Hemmen resigned does not render the statutory interpretation of AS 23.40.210 moot.

 We conclude that the objective of AS 23.40.210 is to ensure that all contracts subject to the statute contain such a procedure, and that binding arbitration be included as the final step of all grievance procedures. Consequently, we hold that the agreement's exclusion of grievances involving involuntary transfers from binding arbitration violates AS 23.40.210.[5] In our view, the provision that involuntary transfer questions shall not be arbitrated is not sufficiently important in light of the entire agreement between the Department and the union to render the entire agreement unenforceable. *See* Restatement (Second) of Contracts §§ 178 & 184 (1981). Thus, only that provision is unenforceable.[6] The superior court's decision is therefore REVERSED and the case REMANDED with instructions that it be DISMISSED and sent to binding arbitration, as required by AS 23.40.210.[7]

2. The trial court's ruling would have allowed a trial on Hemmen's breach of contract claim. Hemmen claimed that the court's preclusion of his requested remedies made the trial on liability meaningless and wasteful.

3. *See supra* note 1.

4. AS 23.40.210 provides:
Upon the completion of negotiations between an organization and a public employer, if a settlement is reached, the employer shall reduce it to writing in the form of an agreement. The agreement may include a term for which it will remain in effect, not to exceed three years. The agreement shall include a pay plan designed to provide for a cost-of-living differential between the salaries paid employees residing in the state and employees residing outside the state. The plan shall provide that the salaries paid, as of August 26, 1977, to employees residing outside the state shall remain unchanged until the difference between those salaries and the salaries paid employees residing in the state reflects the difference between the cost of living in Alaska and living in Seattle, Washington. The agreement shall include a grievance procedure which shall have binding arbitration as its final step. Either party to the agreement has a right of action to enforce the agreement by petition to the labor relations agency.

5. Since the resolution of this issue turns on statutory interpretation, it is appropriate to employ the independent judgment standard of review. *State, Dep't of Revenue v. Amoco Prod. Co.,* 676 P.2d 595, 599 (Alaska 1984); *National Bank of Alaska v. State, Dep't of Revenue,* 642 P.2d 811, 815 (Alaska 1983).

6. Formerly, when agreements to arbitrate were regarded as illegal and unenforceable, such provisions were generally regarded as severable and their illegality did not invalidate other sections of the contracts of which they were a part. *See* Restatement of Contracts § 551(1) (1932). Similarly, the present clause, in effect an agreement not to arbitrate, does not go to the essence of the contracting parties' bargain, and thus does not require that the entire contract be unenforceable.

7. Having reached this conclusion, it is unnecessary for us to decide whether the superior court's grant of summary judgment was correct.