**STATE of Alaska, Appellant,**

v.

**PUBLIC SAFETY EMPLOYEES ASSOCIATION, Appellee.**

No. S–10698.

Supreme Court of Alaska.

June 25, 2004.

**17.** *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 61 P.3d 6, 10 (Alaska 2002).

**18.** *Id.*

**19.** *V.F. v. State,* 666 P.2d 42, 46 (Alaska 1983).

Jan Hart DeYoung, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

1.  AS 23.40.210(a).

2.  AS 23.40.070–.260.

James A. Gasper, Public Safety Employees Association, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Alaska labor relations law provides that if a public employer and a labor union successfully negotiate a contract, it "shall include a grievance procedure which shall have binding arbitration as its final step."[1] Does this statute permit parties to a collective bargaining agreement to waive their right to grieve a subject governed by the agreement? The Alaska Labor Relations Agency answered this question "yes." We agree, and therefore affirm the decision of the agency.

## II. FACTS AND PROCEEDINGS

### A. Facts

The Public Safety Employees Association (PSEA) is certified by the Public Employment Relations Act[2] as the exclusive bargaining representative for state correctional officers. The terms and conditions of the officers' employment are governed by a collective bargaining agreement between PSEA and the state. The agreement contains a provision regarding indemnification, under which the state agrees to provide a legal defense to officers sued in their individual capacities unless the state determines that the officer acted beyond the scope of his or her authority or engaged in willful misconduct or gross negligence in performing the acts underlying the complaint. The agreement also explicitly exempts the state's decision whether to provide legal representation to a correctional officer from the grievance procedure[3] which governs the rest of the contract.

3.  This procedure governs any dispute arising from the interpretation or application of the collective bargaining agreement. Efforts at dispute resolution follow four steps which culminate in arbitration.

In July 1999 Raymond Jones, an inmate at the Spring Creek Correctional Center in Seward, filed a complaint in state court against corrections officer Vernon Gilliam,[4] charging him with threatening and intimidating Jones and calling him a "rat" in front of two other inmates. The Department of Corrections (Corrections) subsequently reprimanded Gilliam for his actions. After Jones sued Gilliam, an assistant attorney general notified Gilliam that the state would not provide him with legal representation because it deemed the conduct underlying the lawsuit to be "willful misconduct or gross negligence." Through PSEA, Gilliam filed a grievance, which the state refused to hear because its contract with PSEA explicitly excluded the state's indemnification decisions from the grievance procedure.

At about the same time, Anthony Holland, an inmate at the Palmer Correctional Center, filed complaints in federal and state court against corrections officer Beth Donovan, alleging that she made racially derogatory remarks in a conversation with him. Corrections suspended Donovan for three days. Donovan was also informed that the state would not defend her against Holland's lawsuits because it considered her conduct to be outside the scope of her authority and to constitute either "willful misconduct or gross negligence." Through PSEA, Donovan attempted to grieve the state's decision but this grievance was denied on the same grounds that the state rejected Gilliam's grievance.

### B. Proceedings

After both grievances were rejected by the state, PSEA filed a petition with the Alaska Labor Relations Agency (ALRA) to force the state to arbitrate its indemnification decisions. PSEA argued that its collective bargaining agreement with the state provided that "any controversy or dispute involving the application or interpretation of the terms" of the collective bargaining agreement was subject to the grievance procedure.[5] While conceding that the collective bargaining agreement excluded the state's indemnification decisions from the grievance procedure, PSEA argued that this exclusion was contrary to law and thus unenforceable.

The relevant provisions of the collective bargaining agreement are sections A and F of Article 36. Section A provides:

> If the Employer determines that a bargaining unit member *did not engage in conduct beyond the scope of the bargaining unit member's authority or which constituted willful misconduct or gross negligence in the performance of the bargaining unit member's duties,* upon request the Employer agrees to provide for the legal defense of the bargaining unit member in any civil legal action brought against the bargaining unit member as a result of the performance of the bargaining unit member's duties.

(Emphasis added.) Section F provides:

> For purposes of this Article, Employer means the State of Alaska or designated representative of the State or an agency of the State. Consistent with past practice, *decisions of the Employer pursuant to this Article shall not be subject to the grievance-arbitration procedures.*

(Emphasis added.)

In its petition to force the state to arbitrate its indemnification decisions, PSEA argued that AS 23.40.210(a) requires that "any mandatory subject expressly included in a collective bargaining agreement must be subject to a grievance procedure, otherwise the provision waiving that right is illegal." PSEA relied on *Hemmen v. State, Department of Public Safety*[6] in making this argument. Because PSEA maintained that indemnification is a mandatory bargaining subject, it argued that a collective bargaining agreement that exempted indemnification from the grievance procedure violated AS 23.40.210(a) as we interpreted it in *Hemmen.*

---

4. This complaint also named corrections officer Floyd Ainsworth, Jr. and the Alaska Department of Corrections.

5. Article 16.01A of the CBA defines a grievance as "any controversy or dispute involving the application or interpretation of the terms of this Agreement arising between the Union or an employee or employees and the Employer."

6. 710 P.2d 1001 (Alaska 1985).

Alaska Statute 23.40.210(a) provides in relevant part:

> Upon the completion of negotiations between an organization and a public employer, if a settlement is reached, the employer shall reduce it to writing in the form of an agreement.... *The agreement shall include a grievance procedure which shall have binding arbitration as its final step.*

(Emphasis added.) *Hemmen* is the only case in which this provision has been interpreted. The controversy in that case involved the involuntary transfer of a sergeant in the Department of Public Safety from a position in Fairbanks to one in Anchorage.[7] To avoid being transferred, Hemmen resigned and then filed suit alleging that he had been constructively discharged.[8] At that time, PSEA's collective bargaining agreement provided for "binding arbitration as the final step in all grievances, *except for those grievances involving involuntary transfers.*"[9] Hemmen maintained that the contractual exception for binding arbitration of involuntary transfers violated AS 23.40.210(a).[10] We agreed:

> We conclude that the objective of AS 23.40.210 is to ensure that all contracts subject to the statute contain such a procedure, and that binding arbitration be included as the final step of all grievance procedures. Consequently, we hold that the agreement's exclusion of grievances involving involuntary transfers from binding arbitration violates AS 23.40.210.[11]

A panel of the ALRA board heard the present dispute on August 1, 2000. The panel considered two issues: first, whether legal indemnification is a mandatory subject of bargaining and, second, whether Alaska law requires that all mandatory subjects of bargaining be subject to a grievance procedure, even if the parties have explicitly waived that right during contract negotiations.

Relying on our decisions in *Kenai Peninsula Borough School District v. Kenai Peninsula Education Ass'n (Kenai I)*[12] and *Alaska Public Employees Ass'n v. State,*[13] the board determined that, because indemnification is more closely related to public employees' economic interests than to the state's general policies, it is a mandatory subject of bargaining. However, the board rejected PSEA's interpretation of *Hemmen*, concluding instead that, while binding arbitration must be the final step of any grievance procedure, *Hemmen* does not require that all mandatory subjects of bargaining be subject to the grievance procedure. It thus found that PSEA and the state had explicitly exempted the state's indemnification decisions from the grievance process and it denied PSEA's petition. PSEA appealed.

On June 29, 2002 Superior Court Judge John E. Reese rejected the agency's interpretation of AS 23.40.210(a) and *Hemmen* and held that Article 36F of the agreement, which exempted indemnification decisions from the grievance procedure, was illegal and unenforceable. While acknowledging that *Hemmen* did not explicitly address a situation in which the contract entirely excluded an area of bargaining from the grievance process, the court interpreted *Hemmen* to apply AS 23.40.210(a) to all subjects of negotiation, such that "*all* contracts subject to the statute [must] contain a grievance procedure that culminates with binding arbitration." The court thus concluded that the parties to a collective bargaining agreement may not waive the right to grieve to binding arbitration any issue which has been negotiated into the contract.

Judge Reese stayed his decision pending our review. The state appealed, asking us to reverse the superior court's interpretation of AS 23.40.210(a) and *Hemmen*, to reconsider our decision in *Hemmen* should we agree with the superior court's interpretation of that decision, and to reverse the agency's

---

7. *Id.* at 1001.

8. *Id.* at 1002.

9. *Id.* at 1003 (emphasis in original).

10. *Id.*

11. *Id.*

12. 572 P.2d 416 (Alaska 1977).

13. 831 P.2d 1245 (Alaska 1992).

determination that indemnification is a mandatory subject of bargaining should we find that all mandatory subjects of bargaining must be governed by the grievance-arbitration procedure.

## III. STANDARD OF REVIEW

■ In an appeal from an agency decision, we directly review the agency action in question rather than the decision of the superior court.[14] In considering administrative appeals, we have recognized four principal standards of review:

> The "substantial evidence" test is used for questions of fact. The "reasonable basis" test is used for questions of law involving agency expertise. The "substitution of judgment" test is used for questions of law where no expertise is involved. The "reasonable and not arbitrary" test is used for review of administrative regulations.[15]

■ In interpreting the language of AS 23.40.210(a) generally, we apply our independent judgment.[16] In attempting to ascertain the intent of the legislature, we "construe this statutory language so as to 'adopt a rule of law that is most persuasive in light of precedent, reason, and policy.' "[17]

■ We have not previously decided the appropriate standard of review applicable to the ALRA's determination of what constitutes a mandatory subject of bargaining.[18]

We now hold that, because this is a legal question[19] to which the ALRA brings " 'specialized knowledge and experience' "[20] we will apply the reasonable basis standard of review to the ALRA's categorization of a subject as mandatory or permissive. Under this standard, we will defer to the judgment of the ALRA so long as it is supported by the facts and a reasonable basis in law.[21]

## IV. DISCUSSION

### A. Indemnification Is a Mandatory Subject of Bargaining.

■ We first address whether indemnification is a mandatory subject of bargaining. The ALRA concluded that indemnification is a mandatory subject of bargaining because "public employees would have strong economic interests in legal representation from their public employer as a result of getting sued for a work-related function." Because the agency employed its special expertise in labor relations in reaching this conclusion, we will affirm its judgment so long as it is reasonable.[22] We believe that it is.

The duty to bargain over what are often called "mandatory" subjects of bargaining[23] arises from the requirement that the state and the union negotiate collectively over "wages, hours, and other terms and condi-

---

**14.** *N. Alaska Envtl. Ctr. v. State, Dep't of Natural Res.*, 2 P.3d 629, 633 (Alaska 2000).

**15.** *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

**16.** *State v. Alaska State Employees Ass'n/ AFSCME Local 52*, 923 P.2d 18, 22 (Alaska 1996).

**17.** *Pub. Safety Employees Ass'n v. State*, 799 P.2d 315, 319 (Alaska 1990) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**18.** We specifically declined to reach that issue in *Alaska Public Employees Ass'n v. State*, 831 P.2d 1245, 1247–48 (Alaska 1992). In that case, the agencies had been reorganized before our decision, and we declined the "opportunity to rule on the proper deference due either to the decision of a defunct agency or to the decisions of a new agency that had no involvement whatsoever with the case before us." *Id.* at 1248.

**19.** The definition of mandatory subjects of bargaining comes from the Public Employee Relations Act, and includes "the hours of employment, the compensation and fringe benefits, and the employer's personnel policies affecting the working conditions of the employees." AS 23.40.250(9). *See also* AS 23.40.070(2) (requiring public employers to bargain on "matters of wages, hours, and other terms and conditions of employment").

**20.** *Alaska Pub. Employees Ass'n*, 831 P.2d at 1247 (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987) (emphasis removed)).

**21.** *Alaska State Employees Ass'n/AFSCME Local 52*, 923 P.2d at 24–25.

**22.** *Id.*

**23.** *Alaska Pub. Employees Ass'n*, 831 P.2d at 1246.

tions of employment."[24] The "terms and conditions of employment" include "the hours of employment, the compensation and fringe benefits, and the employer's personnel policies affecting the working conditions of the employees."[25] Mandatory subjects of bargaining have traditionally been defined as those subjects most closely related to the "economic interests of employees."[26]

While the state concedes that its decision whether to provide a legal defense will have a financial impact on its employees, it contends that not all subjects that affect employees' economic interests are mandatory subjects of bargaining. Indeed, the state argues that it has historically considered legal indemnification to be a permissive subject of bargaining due to the state's prerogative to set public policy and to control its litigation strategy. In support of this argument, the state cites *Public Defender Agency v. Superior Court, Third Judicial District*,[27] a case in which we recognized the power of the attorney general "to bring any action which he thinks necessary to protect the public interest, ... [including the corollary power] to make any disposition of the state's litigation which he thinks best, ... [which] includes the initiation, prosecution and disposition of cases."[28] The state contends that, because indemnification is more closely related to government policies than to the economic interests of employees, it is a permissive rather than mandatory subject of bargaining.

In holding that indemnification is a mandatory subject of bargaining, the ALRA relied upon administrative decisions in New York[29] and New Jersey[30] as well as the balancing test we articulated in *Kenai I*.[31] In that case, we explained:

> a matter is more susceptible to bargaining the more it deals with the economic interests of employees and the less it concerns professional goals and methods. Bargaining over the latter topics presents particular problems because there is less likely to be any politically organized interest group other than the union concerned with these issues.... Furthermore, it is such an abstract and abstruse subject that it is unlikely that any appreciable portion of the public will either understand it or care greatly about it. In such circumstances, the risk that effective power over the governmental decision will come to rest with the union is significantly greater. Moreover, it is more likely there will be disagreements among union members on questions of this nature than on "bread and butter" issues; the risk that minority viewpoints within the union will not be meaningfully represented in the bargaining is a real one.[32]

We therefore held that matters such as salaries, fringe benefits, the number of hours worked, and the amount of leave time were mandatory subjects of bargaining, while issues such as preparation time and class size were within the realm of school management and function, despite their obvious relation to the teachers' working conditions.[33]

■ It is often difficult to characterize an issue as either mandatory or permissive. The practical challenges of this process were elucidated in *Alaska Public Employees Ass'n*

---

**24.** AS 23.40.070(2).

**25.** AS 23.40.250(9).

**26.** *Alaska Pub. Employees Ass'n*, 831 P.2d at 1251.

**27.** 534 P.2d 947 (Alaska 1975).

**28.** *Id.* at 950.

**29.** *In the Matter of Patrolmen's Benevolent Ass'n of Newburgh, NY, Inc. & the City of Newburgh*, 18 Off. Dec. of N.Y. Pub. Employ. Rel. Bd., 18 NYPER ¶ 3065 (1985) (explaining that union's demand to negotiate over legal insurance was deemed demand to negotiate over form of compensation and was therefore mandatory).

**30.** *In the Matter of Union County & Union County PBA Locals 199 & 199A*, 25 N.J. Pub. Employee Rep. ¶ 30141 (1999) (stating that agreement to compensate employees for cost of representation and to indemnify them against judgments is mandatorily negotiable term and condition of employment).

**31.** 572 P.2d 416 (Alaska 1977).

**32.** *Id.* at 422.

**33.** *Id.* at 423.

*v. State,*[34] a case in which we considered whether job classifications and salary range assignments were mandatory subjects of bargaining.[35] Because of the close relationship between the job classification plan and the state merit principle, we held that job classification should be exempt from bargaining.[36] With respect to the assignment of positions to salary ranges, we determined the issue to be a *permissive* subject of bargaining—one on which state employees could be heard at the state's discretion—but not a *mandatory* subject of bargaining under existing state salary programs.[37] In reaching this conclusion, we adapted the test for negotiability set out in *Kenai I,* creating instead a "division between mandatory and permissive subjects of bargaining in cases, such as this one, where the government employer's constitutional, statutory, or public policy prerogatives significantly overlap the public employees' collective bargaining prerogatives."[38] Under this modified test, "a matter is more susceptible to categorization as a mandatory subject of bargaining the more it deals with the economic interests of employees and the less it concerns the employer's general policies."[39]

ALRA found that "public employees' ... strong economic interests in legal representation from their public employer as a result of getting sued for a work-related function" is sufficient to ensure that they "have the right to bargain over such an issue." While we are sympathetic to the state's argument that indemnification is closely tied to a governmental function and implicates more than just a public employee's financial interests, we nonetheless conclude that the ALRA had a reasonable legal and factual basis to find otherwise. But because we also agree with the ALRA that the parties to a CBA can waive the right to grieve a mandatory subject of bargaining, we conclude that requiring the parties to negotiate over the subject of indemnification will not infringe upon the state's right to direct its litigation strategies and legal resources where, as here, it exempts such decisions from the grievance process.

## B. Alaska Statute 23.40.210(a) Requires that All Mandatory Subjects of Bargaining Culminate in a Grievance–Arbitration Procedure Unless that Right Is Clearly and Unmistakably Waived.

Resolution of this case depends primarily on our interpretation of the Public Employment Relations Act (PERA): Under the Act, may the parties to a collective bargaining agreement waive the right to arbitrate a mandatory subject of negotiation? We recently set out the principles for interpreting statutory language in *Tesoro Petroleum Corp. v. State,*[40] explaining that, where the text of the statute is arguably ambiguous, we will apply the following precepts to give meaning to the statute:

> The purpose of statutory construction is "to give effect to the intent of the legislature, with due regard for the meaning that the statutory language conveys to others." Statutory construction begins with the language of the statute construed in light of the purpose of its enactment. If the statute is unambiguous and expresses the legislature's intent, statutes will not be modified or extended by judicial construction. If we find a statute ambiguous, we apply a sliding scale of interpretation, where "the plainer the language, the more convincing contrary legislative history must be." [41]

### 1. The plain language of the statute is ambiguous.

Alaska Statute 23.40.210(a) generally addresses the legislature's requirements for labor relations agreements involving public

**34.** 831 P.2d 1245 (Alaska 1992).

**35.** *Id.* at 1249.

**36.** *Id.*

**37.** *Id.* at 1251.

**38.** *Id.*

**39.** *Id.*

**40.** 42 P.3d 531 (Alaska 2002).

**41.** *Id.* at 537 (citations omitted).

employers.[42] In addition to mandating that every such agreement be in writing, that its term not exceed three years, and that it include a cost-of-living differential for in-and out-of-state employees, subsection .210(a) commands that each collective bargaining agreement "include a grievance procedure which shall have binding arbitration as its final step."

The state claims that this requirement is satisfied because the agreement in this case includes a grievance-arbitration procedure, albeit one that exempts the state's indemnification decisions. According to the state, the statute requires only that the agreement include a grievance-arbitration procedure, but it does not require that all mandatory subjects of bargaining be governed by the grievance procedure. The state claims that it would deter collective bargaining and defeat the purposes of PERA if we interpret AS 23.40.210(a) to require that arbitration be available for all subjects of bargaining. In the state's view, AS 23.40.210(a) "does not prohibit bargaining about the availability of arbitration."

The state's analysis notwithstanding, the plain language of subsection .210(a) does not answer the question before us. While the statute on its face requires only that an agreement include a grievance procedure which culminates in binding arbitration, the state's interpretation would permit the parties to waive the right to grieve each negotiated provision. Because that interpretation could potentially read all meaning out of the statute, we cannot rely on the plain language of the statute alone in ascertaining the legis-

lature's intent. We therefore look to other sources to determine what result the legislature intended to achieve.

## 2. The legislative history of AS 23.40.210 is not instructive.

In a prior case involving a different provision of the statute in question here, we noted the lack of legislative history available for AS 23.40.210:

The legislative history of AS 23.40.210 is not particularly enlightening.[fn] Given the ambiguous language of the statute and the absence of relevant legislative history, we construe this statutory language so as to "adopt a rule of law that is most persuasive in light of precedent, reason, and policy." [43]

[fn] House Bill 683 was passed as a rider to a minor amendment to the penalty provision of the Wage and Hour Act. See 1972 H.J. 1312 (May 22, 1972). Then Governor Egan sponsored the bill, but the historical materials give no indication as to the source of the text. Id. at 1321.

## 3. The National Labor Relations Act is inapplicable.

When interpreting the provisions of the Act in the past, we have sought guidance from decisions interpreting the National Labor Relations Act (NLRA),[44] on which the Act was based.[45] But in contrast to the Act, the NLRA does not require that labor contracts include a grievance procedure that culminates in binding arbitration.[46] While we recognize the instructive value of the NLRA and the many cases interpreting it, we can-

---

**42.** The statute provides, in relevant part:
Upon the completion of negotiations between an organization and a public employer, if a settlement is reached, the employer shall reduce it to writing in the form of an agreement. The agreement may include a term for which it will remain in effect, not to exceed three years. The agreement shall include a pay plan designed to provide for a cost-of-living differential between the salaries paid employees residing in the state and employees residing outside the state.... The agreement shall include a grievance procedure which shall have binding arbitration as its final step. Either party to the agreement has a right of action to enforce the agreement by petition to the labor relations agency.

**43.** Pub. Safety Employees Ass'n v. State, 799 P.2d 315, 319 (Alaska 1990) (quoting Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**44.** 29 U.S.C. §§ 151 et seq.

**45.** See, e.g., Pub. Safety Employees Ass'n, 799 P.2d at 318–24 (explaining that this court has "looked to decisions of the National Labor Relations Board ... in interpreting Alaska's labor laws").

**46.** Compare AS 23.40.210(a) with 29 U.S.C. § 158(d).

not rely on federal precedent to resolve whether grievance-arbitration must be available for all mandatory subjects given that the NLRA does not require that a grievance procedure be included in a labor contract.[47] The legislature clearly intended to diverge from the NLRA on this point. We therefore conclude that it would be inappropriate to rely on NLRA precedent to determine whether grievance-arbitration must be available for all mandatory subjects of bargaining pursuant to AS 23.40.210(a).

### 4. The Public Employment Relations Act, taken as a whole, requires that mandatory subjects of bargaining be subject to grievance-arbitration.

We next examine the PERA, the legislation of which AS 23.40.210(a) is a part, in recognition of the principle that "[t]he meaning of a statutory provision is determined by the language of the particular provision construed in light of the purpose of the whole instrument."[48]

Alaska Statute 23.40.070(2) "requir[es] public employers to negotiate with and enter into written agreements with employee organizations on matters of wages, hours, and other terms and conditions of employment."[49] These are the mandatory subjects of bargaining on which the parties must bargain in good faith, although they need not reach agreement.[50] Alaska Statute 23.40.210(a) in turn requires that written agreements include a grievance procedure with binding arbitration as its final step. These sections are best read together to require the parties to a collective bargaining agreement to negotiate on all mandatory subjects of bargaining and, if agreement is reached, that those negotiations be memori-

alized in a written agreement that includes a binding grievance-arbitration procedure. Accordingly, we hold that the legislature intended *all mandatory subjects of bargaining on which agreement has been reached* to be presumptively subject to the agreement's grievance-arbitration procedure. This conclusion is consistent with our prior cases addressing the scope of public employees' right to arbitration.

### a. Our prior cases imply that mandatory subjects of bargaining must be arbitrable.

Much of the controversy in this case arises from the competing interpretations of *Hemmen v. State, Department of Public Safety*[51] and its bearing on the present situation. Our decision in *Hemmen* was brief, and can be summarized in the following two sentences:

> We conclude that the objective of AS 23.40.210 is to ensure that all contracts subject to the statute contain such a procedure, and that binding arbitration be included as the final step of all grievance procedures. Consequently, we hold that the agreement's exclusion of grievances involving involuntary transfers from binding arbitration violates AS 23.40.210.[52]

The ALRA interpreted *Hemmen* to require binding arbitration as the final step of the grievance process, but not to require that all areas of bargaining be subject to the grievance process in the first place. The superior court rejected this reasoning and held that "[t]he more appropriate interpretation of *Hemmen* is that AS 23.40.210(a) applies to all subjects of negotiation." According to the superior court, "the objective of

---

**47.** *NLRB v. Am. Nat'l Ins. Co.*, 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952) (duty to bargain limited to wages, hours and other terms and conditions of employment; all other subjects are permissive areas of bargaining).

**48.** *Forest v. Safeway Stores, Inc.*, 830 P.2d 778, 782 n. 11 (Alaska 1992) (quoting *Wien Air Alaska v. Arant*, 592 P.2d 352, 356 (Alaska 1979)).

**49.** AS 23.40.250(9) defines terms and conditions of employment as "the hours of employment, the compensation and fringe benefits, and the employer's personnel policies affecting the working

conditions of the employees; . but does not mean the general policies describing the function and purposes of a public employer."

**50.** *See* AS 23.40.110(a)(5) (prohibiting public employer from refusing to bargain collectively in good faith); AS 23.40.110(c)(2) (prohibiting labor or employee organization from refusing to bargain collectively in good faith).

**51.** 710 P.2d 1001 (Alaska 1985).

**52.** *Id.* at 1003.

AS 23.40.210 is to insure that *all* contracts subject to the statute contain a grievance procedure that culminates with binding arbitration."

We conclude that the ALRA correctly interpreted *Hemmen*: binding arbitration must be the final step of a contract dispute subject to the grievance process. This means that the grievance process must conclude with binding arbitration, but it does not require that all contract provisions be subject to the grievance process. This interpretation of *Hemmen* is consistent with our prior cases construing the scope of bargaining by public employees, which have implied that arbitration is required only for mandatory subjects of bargaining, and not for all subjects of bargaining.

In *Kenai I*[53] we first considered what types of subjects can be bargained by public employers. We endeavored to balance the requirement to bargain in good faith on matters pertaining to public school employees' "employment and the fulfillment of their professional duties"[54] with the legislative directive prohibiting the "delegation of the legal responsibilities, powers, and duties of the school board including its right to make final decisions on policies."[55] Recognizing the risk that permitting teachers' unions to bargain on matters of educational policy might result in the erosion of school board control over those issues, we set out a test to determine which subjects could be negotiated by school boards and which could not.[56] The test primarily focused on the nexus between the issue sought to be bargained over and the economic interests of the employees.[57] Under our holding in *Kenai I*, certain issues tangentially related to teachers' working conditions, but more closely tied to professional goals and methods—an area over which the school board must retain control—were exempted from the bargaining process.[58] However, we nonetheless encouraged school boards to discuss these issues with their teaching staffs, to consider teacher proposals on such issues, and to draw from the expertise and experience of teachers in establishing educational policy.[59]

Our subsequent decision in *Kenai Peninsula Education Ass'n v. Kenai Peninsula Borough School District (Kenai II )*[60] drew extensively on our discussion in *Kenai I*. In *Kenai II* we considered whether a grievance involving a negotiated contract provision regarding a teacher's non-professional duties could be submitted to arbitration.[61] The collective bargaining agreement negotiated by the teachers and the school board contained two types of grievance procedures, one for violations of the agreement, which would be subject to binding arbitration, and another for violations of school board policy, which could be aired before the school board but could not be arbitrated.[62] Based on our earlier holding, we concluded in *Kenai II* that items which could not be negotiated because they are too closely related to school board policy likewise could not be arbitrated.[63] As we explained:

> To allow such bargaining raised the danger that control over educational policy could be effectively transferred from the school board to the union over a series of contracts and thus undermine the ability of elective officials to perform their duties in the public interest. This danger would be equally present if matters of educational policy were allowed to go to arbitration. Thus, the realm of what is arbitrable is bounded by the limits of what is negotiable.[64]

---

**53.** 572 P.2d 416 (Alaska 1977).

**54.** *Id.* at 417 (quoting AS 14.20.550).

**55.** *Id.* (quoting AS 14.20.610).

**56.** *Id.* at 419, 422.

**57.** *Id.* at 422.

**58.** *Id.*

**59.** *Id.* at 423.

**60.** 628 P.2d 568 (Alaska 1981).

**61.** *Id.* at 569.

**62.** *Id.*

**63.** *Id.*

**64.** *Id.* at n. 1.

Most recently, in *Alaska Public Employees Ass'n v. State (APEA)*,[65] we again addressed what types of subjects could be considered mandatory and therefore arbitrable.[66] In *APEA*, the union contested the agency's categorization of job classification and salary range assignments as nonmandatory subjects of bargaining and argued that, even if these subjects did not have to be bargained over, the state should nonetheless be required to submit disputes over those issues to binding arbitration.[67] We disagreed, holding that "[b]inding arbitration is not absolutely available when the matter in dispute is not a mandatory subject of bargaining."[68] We did not have occasion in the context of the *APEA* decision to consider whether, conversely, all mandatory areas of bargaining are subject to the grievance-arbitration process. We explicitly hold today that they are.

### 5. The right to grieve mandatory subjects of bargaining can be waived by PSEA.

■ But this case also presents the question whether a union can waive the right to grieve a mandatory subject of bargaining. The ALRA held that PSEA can waive the right to arbitrate mandatory subjects if such waiver is clear and unmistakable. In reaching this conclusion, the agency relied upon decisions by the Tenth Circuit[69] and the National Labor Relations Board[70] that permitted unions to waive the right to bargain over wages or other mandatory subjects of negotiations so long as the waiver was clear

and unmistakable. We have previously stated that unions must have broad discretion to serve the employees they represent,[71] and we see no reason why this discretion should not extend to a union's ability to waive the right to grievance-arbitration, even for a mandatory subject of bargaining.

This approach finds support in federal decisions allowing unions to waive employees' statutory rights, but requiring that such waiver be clear and unmistakable. In *Metropolitan Edison Co. v. NLRB*,[72] the United States Supreme Court held that a union could waive its officers' statutory rights under the NLRA, but required that the waiver be clear and unmistakable.[73] Likewise, in *Wright v. Universal Maritime Service Corp.*,[74] the Court stated that a union-negotiated collective bargaining agreement could waive an employee's statutory right to a judicial forum for a discrimination claim in favor of binding arbitration so long as the waiver of the statutory remedy was clear and unmistakable.[75] The Court has reached a similar conclusion in numerous additional cases.[76]

The statutory right to grieve mandatory subjects of bargaining is an important one, but certainly no more important than an employee's statutory right to a judicial remedy for a discrimination claim. Just as an employee can waive a statutory right to a judicial remedy for a discrimination claim, an employee's union can waive a statutory right to arbitrate mandatory subjects of bargaining. Accordingly, we hold today that PSEA can waive the right to grieve mandatory sub-

**65.** 831 P.2d 1245 (Alaska 1992).

**66.** *Id.* at 1252.

**67.** *Id.*

**68.** *Id.*

**69.** *Capitol Steel & Iron Co. v. N.L.R.B.*, 89 F.3d 692 (10th Cir.1996).

**70.** *Allison Corp. & Furniture Workers Div., I.U.E. Local 282*, 330 NLRB 1363 (2000).

**71.** *See, e.g., Thomas v. Anchorage Tel. Util.*, 741 P.2d 618, 630 (Alaska 1987) (union must have valid reasons for differentiating in its treatment of groups of employees but has "wide range of reasonableness to serve the unit it represents").

**72.** 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983).

**73.** *Id.* at 708, 103 S.Ct. 1467 (stating that Court "will not infer from a general contract provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable.").

**74.** 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998).

**75.** *Id.* at 80, 119 S.Ct. 391.

**76.** *See id.* (listing cases holding that waiver of statutory rights must be clear and unmistakable).

jects of bargaining. But, consistent with the federal courts and with our own precedent,[77] such waiver will be effective only when it is clear and unambiguous.

■ The collective bargaining agreement negotiated by PSEA and the state clearly and unmistakably waived the employees' right to grieve the state's decision not to provide them with legal representation if they acted beyond the scope of their authority or engaged in willful misconduct or gross negligence. PSEA agreed that the state's decision not to indemnify an employee "shall not be subject to the grievance-arbitration procedures." The collective bargaining agreement does not, however, waive an employee's right to grieve the state's determination that he or she acted outside the scope of his authority or committed misconduct. Nor does it bar an employee from grieving the disciplinary action imposed as a result of such misconduct.[78] Just as important, since a collective bargaining agreement can cover only a three-year period,[79] PSEA is free to negotiate new terms in a subsequent agreement.

Allowing PSEA to waive an employee's statutory right to grieve certain decisions made by the state will allay the state's concern about losing control over such issues as its litigation strategies without sacrificing public employees' right to a grievance procedure for mandatory subjects of bargaining. Legal indemnification is a mandatory subject of bargaining which, absent an express agreement to the contrary, must be subject to a grievance procedure with binding arbitration as the final step. But PSEA, in its capacity as the public safety employees' union, has the discretion to waive this right in the course of its contract negotiations with the state. In all circumstances, such waiver must be clear and unmistakable.

## V. CONCLUSION

Because legal indemnification is a mandatory subject of bargaining, it must be subject to the grievance-arbitration procedure of the public employees' contract with the state. However, because unions have broad discretion to negotiate in the interest of their members, PSEA can waive the right to grieve even a mandatory subject of bargaining. We therefore REVERSE the decision of the superior court and AFFIRM the decision of the Alaska Labor Relations Agency.

77. *Univ. of Alaska v. Univ. of Alaska Classified Employees Ass'n,* 952 P.2d 1182, 1185 (Alaska 1998) (waiver of bargaining subject by express agreement must be in clear and unmistakable language).

78. Additionally, because no party to this litigation asserts the existence of any statutory right to

a judicial remedy for a claim of wrongful denial of defense or indemnification, we do not decide whether the collective bargaining agreement's waiver of the right to grieve might affect any employee's right to a judicial remedy.

79. AS 23.40.210(a).