**Daniel N. BLACKBURN, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, and Local 71, Public Employees Association, Appellees.**

**No. S–11096.**

Supreme Court of Alaska.

Dec. 17, 2004.

Stuart C. Rader, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellant.

David T. Jones, Assistant Attorney General, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee State of Alaska, Department of Transportation and Public Facilities.

Kevin Dougherty, Anchorage, for Appellee Public Employees Local 71.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

This appeal concerns the termination of a probationary state employee, Daniel Blackburn, who argues on appeal that he was wrongfully discharged without just cause. Asserting that Blackburn was an at-will employee, the state contends that Blackburn was not entitled to just cause protection. We agree, and affirm the superior court's grant of summary judgment against Blackburn on his wrongful discharge, misrepresentation, implied covenant, and due process claims.

## II. FACTS AND PROCEEDINGS

Daniel Blackburn worked for the State of Alaska at the Cold Bay airport from January 21 to March 3, 2000. Although Blackburn had applied for a position as a heavy-equipment operator, the state mistakenly classified him as a heavy-duty mechanic. (As a result, he received an additional tool allowance of thirty dollars.) Under the collective bargaining agreement (CBA) negotiated between Blackburn's union, Local 71, and the state, Blackburn was required to serve a six-month probationary period.

Blackburn was initially allowed to use a state vehicle for personal errands, but in early February he was instructed not to do so after his supervisor, Gerry Dias, saw the vehicle parked outside a local bar on multiple occasions. On February 14, 2000 Dias gave Blackburn a letter that instructed him not to use state vehicles for non-state business without authorization. Dias later informed his superiors that Blackburn would not follow directions; Dias informed them of evidence that Blackburn had broken the rules by smoking in the state vehicle and that he had mishandled equipment, causing a plow blade to break. Blackburn disputes Dias's allegations.

The state notified Blackburn on February 18, 2000 that it intended to terminate his employment as of March 3, 2000. The state's letter explained that the reason for Blackburn's termination was inadequate performance, citing Blackburn's failure to follow instructions and his failure to operate equipment in an appropriate manner. Blackburn responded to the state by letter and defended his performance.

Blackburn filed a grievance through his union. He claimed that the termination was wrongful; he argued that he had received inconsistent and contradictory instructions during his employment, and alleged "possible age discrimination." The state denied the grievance, arguing that any disputes over non-retention of probationary employees are not subject to the grievance procedure. The union pursued the grievance to the next step. The state denied the grievance again, based on the union's failure to file the grievance on time and Blackburn's probationary status. The union informed the state that, while the union disagreed that the grievance was untimely, it was closing its grievance file because pursuing it was futile in light of Blackburn's probationary status.

Several months after his termination, Blackburn applied for state employment at the Ted Stevens Anchorage International Airport. Blackburn was hired as a nonpermanent on-call equipment operator, but was dismissed after—both parties agree—management learned of his Cold Bay experience.

Blackburn sued the state and Local 71 on December 4, 2001, asserting claims against the state for wrongful termination, denial of due process, and misrepresentation. He asserted claims against the union for breach of the duty of fair representation and denial of due process. The state and Local 71 moved for summary judgment. Five days before the scheduled trial, the superior court granted summary judgment to the state on all claims and to Local 71 on the due process claim. Blackburn moved for reconsideration on January 17, 2003. The court initially granted reconsideration of the implied covenant of good faith and fair dealing claim that Blackburn had raised in opposing summary judgment, but after receiving the state's response, the court denied reconsideration of the summary judgment order as to that claim. Final judgment for the state was subsequently entered. Blackburn appeals.

## III. DISCUSSION

### A. Standard of Review

 A grant of summary judgment is reviewed de novo.[1] We review the facts presented in the light most favorable to the non-movant to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law.[2]

### B. Blackburn Was an At–Will Employee.

 The superior court determined that, as a matter of law, Blackburn was an at-will employee whom the state could dismiss without just cause. The contract negotiated between the state and Local 71 provides that the state can discharge permanent employees only for just cause, but does not expressly so provide for probationary employees.[3] Because Blackburn was a probationary employee, the superior court concluded that he was not exempt from what that court said was the "legal presumption" of at-will employment.[4] Despite Blackburn's claims that the state must apply objective standards to all of its retention decisions and that these

standards require that the state discharge its probationary employees only for objective reasons,[5] the court concluded that Blackburn had "simply failed to show that he was for any reason exempted from the legal presumption of at-will employment."

Blackburn argues on appeal that state probationary employees are distinguishable from private employees because their employment is governed by the merit principle set forth in article XII, section 6 of the Alaska Constitution[6] and the State Personnel Act.[7] He asserts that the merit principle requires that the state only dismiss employees for just cause.

Alaska Statute 39.25.010 only specifies that separation "for cause" is required for permanent employees.[8] The Personnel Rules promulgated by the Director of Personnel also limit just cause protection to permanent employees.[9] The rules entitle probationary employees only to a written statement of the reasons for dismissal; Blackburn received a written statement of reasons. As the state points out, the statutory mandate that employees complete a period of probation[10] would serve no purpose if the state must also

---

1. *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003).

2. *Crosby v. Hummell*, 63 P.3d 1022, 1027 n. 17 (Alaska 2003).

3. The CBA provides: "The Employer retains the right to discharge a *permanent* employee for just cause such as incompetence, unsatisfactory performance of duties, and unexcused absenteeism." (Emphasis added.)

4. *See Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1131 (Alaska 1989) (stating that if term of employment is not for express or implied determinable length of time, employee is at-will).

5. *See Cassel v. State, Dep't of Admin.*, 14 P.3d 278, 283–84 (Alaska 2000) (holding that state could only fire probationary employee for failure to meet objective standards where employment contract required performance evaluations).

6. "The legislature shall establish a system under which the merit principle will govern the employment of persons by the State." Alaska Const. art. XII, § 6.

7. AS 39.25.010–.995.

8. Under AS 39.25.010(b)(3), "the merit principle of employment includes ... retention of employees with *permanent status* on the basis of the adequacy of their performance, reasonable efforts of temporary duration for correction in inadequate performance, and separation for cause." (Emphasis added.)

9. 2 Alaska Administrative Code (AAC) 07.415 (am.6/28/84) provides:
 (a) *The appointing authority may dismiss a permanent employee for just cause only.* If necessary, the appointing authority may approve a suspension of up to 30 days to conduct an investigation of the cause for dismissal. The employee must be given two weeks' notice before the dismissal, unless the employee's presence at the work site is contrary to the best interests of the state.
 (b) *The appointing authority may dismiss an employee who does not hold permanent status.*
 (c) If the appointing authority dismisses an employee, the appointing authority shall provide the employee with a written statement of the reasons for dismissal. The appointing authority shall file a copy of the statement with the director.
 (Emphasis added.)

10. *See* AS 39.25.150(7).

show just cause to dismiss probationary employees.

Nonetheless, Blackburn contends that the Act and related regulations require performance evaluations of all public employees, including probationary employees, and that these create just cause protection for probationary employees.[11] He points to a personnel rule—2 AAC 07.295—that provides that the Director of the Division of Personnel "shall prescribe the nature, form, and frequency of personnel evaluations and may require a personal evaluation at any time during an employee's probationary period." Blackburn argues that the regulation requires evaluations of probationary employees and only gives the director discretion to decide when to conduct the evaluation within the probationary period. A more plausible interpretation is that it authorizes the director to require an evaluation without obligating the director to do so. Likewise, AS 39.25.150(14), which requires "the development, maintenance, and use of employee performance records," does not expressly mandate performance evaluations of probationary employees.

■ Absent a statutory mandate to the contrary, the parties to an employment contract may incorporate provisions such as mandatory performance evaluations of probationary employees into the contract. Blackburn argues that Section 18.04 of the CBA provides for performance evaluations by stating:

> Performance Evaluation Reports will be discussed with an employee by the rater. An employee may, at their option, have a Union representative present during the discussion. An employee who disagrees with a performance evaluation may submit written comments within five (5) working days. The written comments shall be attached to the performance evaluation and become a part of the employee's personnel

file. Following the discussion of the performance evaluation with the employee, the evaluation will be signed by the employee and the rater. The signed evaluation, together with any employee comments, shall constitute the evaluation. The employee shall receive a copy of the finalized evaluation.

This section of the CBA merely outlines the procedures followed for preparing performance evaluations, however. It does not require the state to prepare performance evaluations of probationary employees.

Blackburn also relies on the Department of Transportation Employee Handbook for support. He points to handbook language that requires performance evaluations of all employees. But the handbook provision cited by Blackburn does not apply expressly to probationers, and its terms make it apparent that the reports are designed to evaluate permanent employees on a periodic basis as "an integral part of [ ] career development."[12] In the handbook's separate provision governing probationary employees, the probationary period is described as "part of the examination process where employees must demonstrate their ability to do the work and adjust to the demands of the position." Employees are warned that they must " 'pass' this trial period before they can earn permanent status." As we concluded in our discussion of the CBA provisions relating to performance evaluations, the Employee Handbook's provision on this topic does not require the state to prepare performance evaluations of probationary employees.

Blackburn also maintains that references to the "rater" in the CBA establish that preparation of performance evaluation reports under the contract is governed by the Rater's Guide to Performance Evaluations. The Rater's Guide instructs raters to prepare evaluation reports "midway through an em-

---

11. *See Cassel,* 14 P.3d at 283–84.

12. The handbook provision relied upon by Blackburn states:

> Performance Evaluation Reports are designed to aid communications between you and your supervisor, to clarify your duties and responsibilities, to inform you of the strengths and

weaknesses of your performance, and to identify future expectations. Reports are required for all employees. Evaluations are conducted periodically and are an integral part of your career development. They will be considered in recommending you for promotion, salary increases, transfer, or disciplinary action.

ployee's probationary period and just prior to the completion of the probationary period." It recommends use of performance evaluation results "as a guide to personnel actions such as promotion, transfer, retention after probationary period, demotion, and termination." Although this language indicates that performance evaluations of state probationary employees are required, we noted in *Witt v. State, Department of Corrections* that references to the "rater" in the performance evaluation provision of the predecessor contract between the state and Local 71 do not refer to the Rater's Guide.[13] Thus, provisions in the Rater's Guide are inapplicable to Blackburn.

■ Finally, Blackburn argues that he was not an at-will employee because he was statutorily entitled to arbitrate his grievance. Although the CBA excludes grievances concerning the termination of probationary employees from arbitration, Blackburn challenges the exclusion's legality under AS 23.40.210(a), which requires that public employers' union contracts provide for grievance procedures that include arbitration. Blackburn asserts that because the statute requires "the State as an employer to explain the reasons for its termination decisions and to defend its decisions to an arbitrator under the grievance procedure," the state cannot fire a probationary employee on a mere whim.

■ In *Hemmen v. State, Department of Public Safety*, we struck down a provision in a public employer's union contract that excluded involuntary transfer grievances from binding arbitration.[14] We held there that the provision violated AS 23.40.210, and stated that "the objective of AS 23.40.210 is to ensure that all contracts subject to the statute contain [a binding arbitration] procedure,

and that binding arbitration be included as the final step of *all* grievance procedures." [15] In *State v. Public Safety Employees Association*, we clarified that section .210 requires arbitration of all grievances concerning mandatory subjects of bargaining.[16] But unions enjoy broad discretion to serve the employees they represent; they may waive employee statutory rights if the waiver is clear and unambiguous.[17] The CBA negotiated by Local 71 and the state clearly and unambiguously waives probationary employees' right to arbitrate a demotion or dismissal. It provides:

> Any grievance which involves the application or interpretation of the terms of this Agreement or is an *appeal from demotion or dismissal of a permanent employee*, or an *appeal from dismissal of a probationary employee holding permanent status in another classification,* which is not settled at Step Three may be submitted to arbitration for settlement.

(Emphasis added.)

Thus, the agreement explicitly limits the right to arbitrate demotion or dismissal decisions to permanent employees and probationary employees holding permanent employee status in another classification. It unmistakably waives probationary employees' right to arbitrate their termination grievances. Blackburn was therefore not entitled to arbitrate his grievance.

We held in *Witt* that a CBA between the state and Local 71 that had language "substantially similar" to the CBA applicable to Blackburn permitted the state to dismiss probationary employees at will.[18] Because the contract neither explicitly required performance evaluations nor referred to the Rater's Guide, we concluded that, per the con-

13. *Witt v. State, Dep't of Corr.,* 75 P.3d 1030, 1033 (Alaska 2003). *Cf. Cassel,* 14 P.3d at 283 n. 19 (concluding superior court did not err in citing Rater's Guide where it was referred to by name in collective bargaining agreement). Blackburn concedes that "[t]he contract provisions under consideration in this case are, at least, substantially similar, if not precisely identical, to those the court considered in *Witt.*"

14. *Hemmen v. State, Dep't of Pub. Safety,* 710 P.2d 1001, 1003 (Alaska 1985).

15. *Id.* (Emphasis added.)

16. *State v. Pub. Safety Employees Ass'n,* 93 P.3d 409, 419 (Alaska 2004).

17. *Id.* at 419–20.

18. *Witt,* 75 P.3d at 1033–34.

tract's language, a probationary employee "was an at-will employee and was not entitled to dismissal only for good cause."[19]

Because we find nothing in the state statutes, the state personnel rules, or the CBA that requires the state to apply any kind of objective standard to probationary employee retention decisions, or otherwise indicates that probationary employees are entitled to just cause protection, we affirm the superior court's determination that Blackburn was an at-will employee whom the state could dismiss without just cause. The state's only duty was to provide Blackburn with a written statement of the reasons for his dismissal.[20] The state's February 18, 2000 letter to Blackburn, in which it described Blackburn's inadequate job performance, satisfied that duty.

### C. Blackburn's Termination Did Not Violate His Procedural Due Process Rights.

■ The superior court held that, as a matter of law, the state did not violate Blackburn's due process rights when it terminated him.[21] Citing *Breeden v. City of Nome*,[22] the court concluded that Blackburn, as an at-will employee, had no property interest in his continued employment that was subject to due process protections. Blackburn argues that he was not an at-will employee and therefore had a property interest in his employment. Because we agree that Blackburn was an at-will employee (see Part III.B), we affirm. A state employee who serves at will has no expectation of continued employment and therefore no property right.[23]

### D. The Superior Court Did Not Err in Refusing To Consider Whether the State Had Violated Blackburn's Due Process Rights by Depriving Him of His Liberty Interest in His Reputation.

Blackburn's motion for reconsideration argued for the first time that the state had deprived him of his liberty interest in his reputation. Although he had alleged in his complaint that the state had refused to employ him "based on Blackburn's termination from Cold Bay," his due process claim only alleged that he had "no notice of his alleged unsatisfactory performance [and] no opportunity to present evidence on the issue." His opposition to the state's motion for summary judgment also failed to mention his liberty interests. Concluding that the issue was untimely, the superior court declined to consider it in ruling on Blackburn's claims.

■ The court's ruling was proper. "[T]he court was under no obligation to consider an issue raised for the first time in a motion for reconsideration."[24] Because Blackburn failed to raise the issue in a timely fashion, it is not properly before us on appeal.[25]

### E. The Superior Court Did Not Err in Granting Summary Judgment for the State on Blackburn's Implied Covenant of Good Faith and Fair Dealing Claim.

■ In ruling on the state's motion for summary judgment, the superior court noted:

Blackburn does raise—very briefly—in his opposition to summary judgment only the issue of the implied covenant of good faith

---

**19.** *Id.See also Cassel*, 14 P.3d at 284 n. 23 (noting that "just cause is not per se required for the termination of probationary employees").

**20.** 2 AAC 07.415.

**21.** The court also granted summary judgment to Local 71 on Blackburn's due process claim. Blackburn's appeal of this issue hardly merits discussion. State action is a requisite element of a due process claim. *See White v. State, Dep't of Natural Res.*, 984 P.2d 1122, 1126 (Alaska 1999). As a private labor organization, the union is not susceptible to constitutional due process claims.

**22.** *Breeden v. City of Nome*, 628 P.2d 924, 926 (Alaska 1981).

**23.** *See Revelle v. Marston*, 898 P.2d 917, 925 n. 14 (Alaska 1995); *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1148 (Alaska 1986).

**24.** *J.L.P. v. V.L.A.*, 30 P.3d 590, 597 n. 28 (Alaska 2001) (citing *DeNardo v. GCI Communication Corp.*, 983 P.2d 1288, 1290 (Alaska 1999)).

**25.** *Stadnicky v. Southpark Terrace Homeowner's Ass'n, Inc.*, 939 P.2d 403, 405 (Alaska 1997).

and fair dealing that adheres to every contract. Because Blackburn neither raised this issue in his complaint nor briefed it appropriately during the summary judgment process, it will not be considered in this decision.

The court granted summary judgment for the state on all claims against it. Blackburn raised the implied covenant claim again in his motion for reconsideration, arguing that "[w]hile Blackburn withdrew his claim for misrepresentation based on the bar created by AS 09.50.250(3), the facts stated in his complaint support a claim for the breach of the covenant of good faith and fair dealing against the State." In support of his argument, he referred only to the state's misrepresentation regarding the position he was to fill. The superior court granted the motion to give Blackburn an opportunity to "file a much more detailed legal and factual analysis." Upon receipt of the state's response to Blackburn's motion, the court denied Blackburn's motion for reconsideration of the issue.

On appeal, Blackburn argues that the state breached the implied covenant when it hired him "based on a misrepresentation as to the nature of the position he was to fill" and then failed to conduct performance evaluations in order to cover up the fact that he was hired for the wrong position. He asserts that he "was hired as a placeholder until the State found someone with more mechanical skills."

The state asserts that Blackburn waived his implied covenant claim when he failed to assert it before filing his opposition to the state's summary judgment motion. It also argues that the claim was barred by AS 09.50.250(3) because it arose out of the state's alleged misrepresentation. Lastly, it argues that Blackburn's claim could not survive summary judgment because the state's al-

leged misrepresentation deprived him of nothing and was not objectively unfair.

Because Blackburn's implied covenant argument relates closely to the misrepresentation claim raised in his complaint, it is timely.[26] The implied covenant of good faith and fair dealing has both objective and subjective components.[27] The objective prong of the covenant is breached when an employer fails to act in a manner that a reasonable person would consider fair, which includes treating similarly situated employees disparately, terminating employees on unconstitutional grounds, and terminating employees in violation of public policy.[28] The subjective prong of the covenant is breached when an employer is motivated by the goal of depriving the employee of a benefit of the contract.[29]

Blackburn claims that the state misrepresented that it had a position for a permanent heavy equipment operator at Cold Bay. He maintains that the state only needed someone for temporary snow removal. Because the only available permanent position was for a heavy duty mechanic, the state hired Blackburn to remove snow, but misclassified him as a heavy duty mechanic until it could hire someone with mechanical skills.

Although it arguably would have violated public policy if, as Blackburn alleges, the state had only hired him until it could find someone with mechanical skills to replace him, Blackburn offers no evidence to support his claim. Even if we draw all inferences in Blackburn's favor, we conclude that Blackburn has not raised a genuine dispute over the state's motives for discharging him. The record indicates that a heavy duty mechanic, Joe Hopkins, was hired to start work at Cold Bay on March 1, 2000, around the time Blackburn was discharged. [Exc. 46] But the state had two unfilled positions when

---

**26.** *See Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 788 (Alaska 2002) ("In order to determine whether the 'new' arguments will be considered here, we ask whether they were raised expressly below and, if not, whether they are closely related to the trial court arguments and could have been gleaned from the pleadings.") Insofar as Blackburn's arguments relate to his misrepresentation claim, we will consider them. We will not consider new theories, such as Blackburn's dis-

parate treatment argument, raised for the first time on appeal. *See id.*

**27.** *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1034 (Alaska 2003).

**28.** *Id.*

**29.** *Id.*

Blackburn was hired; therefore, Hopkins was not necessarily hired to replace Blackburn. Contrary to Blackburn's assertions, Blackburn's supervisor had received authorization to hire an equipment operator prior to Blackburn's hire. Nothing suggests, therefore, that the state's misclassification of Blackburn's position was anything other than an innocent error that did not harm Blackburn.

Even if there were evidence to support Blackburn's misrepresentation claim, it fails as a matter of law. Alaska Statute 09.50.250(3) bars any actionable claim against the state that "arises out of . . . misrepresentation." Because Blackburn's implied covenant claim arises out of the state's alleged misrepresentation of the position he was hired to fill, it is barred by the statute.

## IV. CONCLUSION

We AFFIRM the superior court's grant of summary judgment on Blackburn's wrongful discharge, due process, and implied covenant claims against the state and his due process claim against Local 71.